**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 16, 2016

**BY HAND AND ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
    United States Courthouse
500 Pearl Street, Chambers 1020
New York, New York 10007

    Re:   *United States* v. *Walters*,
           S1 16 Cr. 338 (PKC)

Dear Judge Castel:

      The Government respectfully writes to the Court to report a recent, significant development relating to the leaks issue that is the subject of Your Honor's November 17, 2016 order, and to address, in light of that development, how we believe the Court should proceed on this issue.

      On December 6, 2016, during an interview conducted by the U.S. Attorney's Office (the "USAO") in preparation for the hearing the Court ordered in this case, a Special Agent ("the Agent") with the Federal Bureau of Investigation admitted that he was a significant source of confidential information leaked to reporters at both the *Wall Street Journal* and the *New York Times* about the underlying investigation.[1] The Agent further admitted that, prior to his December 6 interview, he had hidden those communications with the press from both the USAO and others within the FBI.

      Based upon the Agent's admissions, which the USAO and the FBI regard with the utmost seriousness, it is now an incontrovertible fact that there were FBI leaks of confidential information to the press regarding this investigation. The inquiry conducted by the USAO (which included interviews of all relevant individuals within the USAO and FBI, as well as the review of emails and text messages) also confirmed that the articles written by the *Wall Street Journal* and the *New York Times* and the potential of a government leak caused great distress and anger at all levels within the USAO (up to the United States Attorney) and the FBI (up to the Assistant Director in Charge of the New York Field Office). Our inquiry also corroborated the

---

[1] The Agent at issue is not Matthew Thoresen, the case agent identified in prior Government filings with the Court.

Agent's admission that he had not disclosed his communications with the press about this investigation to the USAO and to others within the FBI.  In light of this recent admission, the FBI has reported the Agent to its Office of Professional Responsibility ("OPR"), and the USAO has separately referred this matter to the Office of Inspector General for the Department of Justice ("DOJ OIG").  Those referrals are now pending, and following our initial interviews, the Agent has declined to meet with us further without counsel.

In accordance with the procedures outlined in *In re Sealed Case No. 98-0377*, 151 F.3d 1059 (D.C. Cir. 1998) for this type of situation, we have, today, separately provided to the Court, *ex parte* and under seal, a more detailed factual submission that describes the USAO's inquiry into the leaks issue and examines, in the context of the underlying grand jury investigation, whether a violation of Federal Rule of Criminal Procedure 6(e) has occurred.  For the reasons set forth below and in the *ex parte* submission, we respectfully submit that the Court should proceed to the issue of remedy without the need for a hearing.

A.   Background

Between May 30, 2014 and June 23, 2014, the *Wall Street Journal* and the *New York Times* published a total of seven articles (the "Articles") about the investigation that led to the Indictment in this case.  The Articles reported sensitive and confidential details, including trades being examined, records being analyzed, the name of an individual approached by the FBI, and the supposed targets of the investigation.  The Articles noted that publicity could jeopardize any potential case and hamper efforts to collect evidence.

Almost two years later, on May 19, 2016, the Government unsealed the Indictment in this case, charging the defendant in ten counts with conspiracy to commit securities fraud, conspiracy to commit wire fraud, and substantive securities and wire fraud.

On September 23, 2016, the defendant filed a motion which argued, among other things, that the prosecution team violated Rule 6(e) of the Federal Rules of Criminal Procedure by leaking information about the grand jury investigation of this matter, including "the names of targets and the contents of records obtained through grand jury subpoenas."  (Def. Br. 38.)

On October 21, 2016, the Government responded that the defendant had failed to meet his burden of demonstrating a *prima facie* case of Rule 6(e) violations.  The Government's submission principally argued, based upon the information available to the USAO at the time, that while the Articles unquestionably revealed confidential information, the defendant had not demonstrated that a "matter occurring before a grand jury" had been made public.  The Government also submitted a declaration under oath by the prosecutor then principally responsible for the investigation, who swore that neither he nor the lead case agent for the FBI had leaked information to the press.[2]  The Government therefore argued that the defendant could not meet his burden of making a *prima facie* case of a Rule 6(e) violation by the Government.

---

[2] The representations made in that declaration remain fully accurate.

On November 17, 2016, the Court entered an order (the "Order") stating that "the newspaper articles in totality and in specifics are suggestive of a government leak, including of subpoenas arguably protected under Rule 6(e)." The Order set a hearing to address communications between the Assistant U.S. Attorneys and special agents of the FBI with employees of the *New York Times* and *Wall Street Journal*, including the reporters who wrote the Articles, from April 1, 2014 to June 30, 2014. That hearing is currently scheduled for December 21, 2016 at 3:00 p.m.

In preparation for the hearing, Assistant United States Attorneys, assisted by FBI counsel, reviewed documents from the USAO and the FBI, and interviewed multiple prosecutors and agents who had participated in the underlying investigation. Details regarding that inquiry are set forth in the Government's *ex parte* submission.

As set forth in greater detail in the *ex parte* submission, on December 6, 2016, the Agent admitted that he disclosed confidential information about the investigation to the *New York Times* and *Wall Street Journal* reporters who wrote the Articles. The Agent, among other things, also stated that he had not informed anyone at the FBI or the USAO of this fact prior to December 6. Our inquiry corroborated the lack of awareness of the Agent's disclosures by others at the FBI or the USAO. Indeed, our interviews and review of documents confirmed that members of the USAO and the FBI at all levels were distressed and angered by the Articles and the potential for leaks.

**B.      Next Procedural Steps**

    **1.      Applicable Law**

The Second Circuit Court of Appeals has not yet had occasion to address the appropriate procedure for courts to employ when the defendant has made a *prima facie* showing of a Rule 6(e) violation, thereby shifting the burden to the Government to respond to that *prima facie* case.

However, the D.C. Circuit Court of Appeals considered this issue at length in the seminal case *In re Sealed Case No, 98-3077*, 151 F.3d 1059 (D.C. Cir. 1998). There, the Court determined that the following procedures should be followed by federal courts and by the Government in responding to allegations of a Rule 6(e) violation based upon government leaks to the media:

- In the first instance, the Government should respond *ex parte* and *in camera* to a *prima facie* case of a Rule 6(e) violation;

- The district court should then review the Government's submission to determine whether it effectively rebuts the movant's *prima facie* case;

- If the Government's submission effectively rebuts the *prima facie* case, then the movant's application should be dismissed, without more;

- If the court is unable to make a determination, further proceedings may be appropriate, and those proceedings should also be conducted *ex parte* and *in camera*;

- Finally, if the district court determines that the Government's *ex parte* response is insufficient to rebut the *prima facie* case, or if a member of the Government admits to violating Rule 6(e), the district court "may proceed to find that a Rule 6(e)(2) violation has occurred," "report this finding to the movants and identify the government agent or attorney responsible for the disclosure," and determine the appropriate remedy with the movant's participation.

*Id.* at 1075-77.

As the D.C. Circuit extensively discussed in *Sealed Case*, the above procedures are designed to protect compelling interests in (i) preserving grand jury secrecy, (ii) achieving "swift resolution" of alleged Rule 6(e) violations, (iii) avoiding "full-blown sidebar trial[s]," (iv) avoiding unnecessary disclosure of the identities of government employees who had access to grand jury information, and (v) allowing the district court "to focus on the culpable individual rather than granting a [discovery] windfall' to the movants." *Id.* at 1072-1077.

As *Sealed Case* emphasizes, grand jury secrecy serves fundamental interests of the criminal justice system: witnesses are less hesitant to testify; those who testify are more likely to testify fully and frankly; and, significantly, persons accused but not charged are not held up to public ridicule. *Id.* at 1070. An open and adversarial hearing about potential leaks, on the other hand, would undermine grand jury secrecy and risk revelation of grand jury material through the cross-examination of government witnesses. *Id.* at 1071. In fact, the D.C. Circuit noted, "[s]hort of a blanket denial of any press contacts at all, it would seem to us to be virtually impossible for [government] personnel to answer movants' questions about whom they talked to, where, and about what without disclosing details of the investigation that tread perilously near to or in fact step over the line into areas of grand jury secrecy." *Id.*[3] An adversarial hearing relating to the grand jury process can also invite future hearings, since if discovery and examination of government witnesses is routinely available, "targets and witnesses would surely be encouraged to bring such proceedings in the hope of obtaining information." *Id.*

Accordingly, the Government respectfully requests that the Court adopt the procedure outlined in *Sealed Case*.

### 2. Application of the Recommended Procedures Here

Consistent with the procedures outlined in *Sealed Case*, we have today submitted for the Court's review, *ex parte* and *in camera*, a detailed response to the *prima facie* case, in which we examine the facts relating to the leaks based upon the information we have gathered and in the context of the underlying grand jury investigation.

---

[3] As the D.C. Circuit also recognized, the strong interest in grand jury secrecy "does not disappear altogether after the investigation is concluded." *Id.* at 1073 n.15.

We respectfully submit that, after reviewing that submission, the Court should then determine what further proceedings it deems appropriate. Should the Court desire further fact-finding proceedings, consistent with *Sealed Case*, we propose that those proceedings also be conducted *ex parte* and *in camera*.

That said, in light of the detailed information set forth in the *ex parte* submission, the Government's view is that further fact-finding proceedings are unnecessary at this juncture, and that the Court may and should proceed directly to consider an appropriate remedy. While we cannot determine with certainty whether a 6(e) violation occurred, it is clear that the Agent improperly leaked confidential information and for that reason is now facing referrals to OPR and DOJ OIG. Because the Government is not in a position to effectively rebut the *prima facie* case that leaks to the media involved a Rule 6(e) violation, we believe that the appropriate next step is for the Court to proceed to determine the appropriate remedy assuming a Rule 6(e)(2) violation. *Sealed Case*, 151 F.3d at 1076.

If the Court accepts this proposal, we respectfully request that the Court set a schedule for submissions on the subject of remedy. But for now, we note that, while courts have considered other remedies, Rule 6 itself identifies a single remedy for a violation of the rule: contempt. *See* Fed. R. Crim. P. 6(e)(7) ("A knowing violation of Rule 6 . . . may be punished as a contempt of court").[4]

## C. Conclusion

For the reasons set forth above and in our *ex parte* submission, the Government respectfully submits that the Court should follow the procedure outlined in *Sealed Case* and proceed to a determination as to remedy under the assumption that a Rule 6(e) violation has occurred.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  /s/ Joan M. Loughnane
Joan M. Loughnane
Daniel S. Goldman
Michael Ferrara
Assistant U.S. Attorneys
(212) 637-2265/2289/2526

cc: Barry Berke, Esq.
    Paul Schoeman, Esq.

---

[4] We note that the Agent may have due process rights on the question of whether he violated Rule (6)(e), in the event that the Court should consider a contempt sanction against the Agent as the appropriate remedy. This can include notice and the opportunity to be heard. *See generally* Fed. R. Crim. P. 42.