**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBerke@KRAMERLEVIN.COM

March 12, 2017

<u>Via ECF</u>

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:   <u>*United States v. William T. Walters*, No. S1 16 Cr. 338 (PKC)</u>

Dear Judge Castel:

      We write in response to the government's request filed last night for *in limine* rulings precluding Mr. Walters "from (i) introducing or referencing the wiretap on the defendant's phone in 2014 and (ii) introducing evidence of improper leaks of confidential information" by the government in 2013 and 2014 (hereafter "Gov. Mtn."). The short answer to the government's application is that we do not intend to elicit either category of evidence for any of the improper purposes the government's letter outlines. But, as we explain below, there are multiple proper purposes for cross-examining the government's cooperator, Mr. Davis, about these issues, relating directly to Mr. Davis' credibility and bias, and there are proper arguments we are permitted to make to the jury. Accordingly, the government's application should be denied.[1]

      I.   <u>The Confrontation Clause and the Defendant's Right to Cross-Examine</u>

      We begin with "the fundamental Confrontation Clause principal that the accused must be given a broad opportunity to cross-examine adverse witnesses for bias." *Brinson v. Walker,* 547 F.3d 387, 393 (2d. Cir. 2008) (citing *United States v. Abel*, 469 U.S. 45 (1984)); *id.* at 392 ("the Confrontation Cause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for

---

[1] We can confirm for the Court that we do not intend to raise any of these issues in our opening statement. We anticipate that they will first arise during the cross examination of Mr. Davis, whom the government has indicated will not be the government's first or second witness but will likely begin testifying during the first week of trial.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Hon. P. Kevin Castel
March 12, 2017
Page 2

their testimony"). "Bias" in this context includes any reason for a witness "to slant, unconsciously or otherwise, his testimony in favor of or against a party," and "may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Id.* at 393-94 (quoting *Abel,* 469 U.S. at 52).

Similarly, a defendant in a criminal case must be given "wide latitude" to cross-examine and impeach a government witness with respect to prior false and inconsistent statements. *See United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013) (explaining, in the context of evaluating the admissibility of prior inconsistent statements, that "[a] district court should afford wide latitude to a defendant in a criminal case to cross-examine government witnesses because the Confrontation Clause gives a defendant the right not only to cross-examination, but to effective cross-examination") (internal citations omitted).

II.   The Government's Wiretap of Mr. Walters' Phone in 2014

To be clear, as we have said in prior submissions, we do not believe there is anything incriminating on any of the recorded wiretapped calls – and the government points to no specific call that shows otherwise. The government's assertion that it has decided to forego introducing allegedly inculpatory evidence "in the interests of justice" therefore rings hollow.

That said, we do not intend to elicit evidence relating to the wiretap of Mr. Walters' phone under the Rule of Completeness (Fed. R. Evid. 106), to prove Mr. Walters' good character, or for the truth of the matters asserted on any calls in violation of the rules against hearsay under Fed. R. Evid. 801(c) and 802. We also do not intend to introduce evidence of the duration of the wiretap or the number of calls recorded. But none of that means that Mr. Walters can or should be precluded from in any way referencing wiretapped or recorded calls. Here, there are at least two proper things that the defense intends to bring out and argue on this subject.

First, we are entitled and intend to use the wiretapped calls to cross-examine and to impeach Mr. Davis. We would potentially use one or more of the recorded calls between Mr. Davis and Mr. Walters to impeach Mr. Davis to the extent he denies the conversation. We also expect to be able to show that certain statements Mr. Davis has made to the government and likely will repeat at trial are inconsistent with statements on one or more recorded calls. In addition, we know from an FBI interview report that the government played at least two wiretapped calls for Mr. Davis and asked him questions about the calls. The government having made the choice to play recorded calls for Mr. Davis, we are entitled to ask Mr. Davis about that and about how it may have influenced his testimony against Mr. Walters. All of this is proper cross-examination and/or impeachment that does not run afoul of any of the rules cited in the government's motion. (To the extent the Court would like further details about this anticipated cross-examination, we ask to submit them after the completion of Mr. Davis' direct examination or *ex parte*.)

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Hon. P. Kevin Castel
March 12, 2017
Page 3

Second, and separately, it is black letter law that while "the government is not obligated to make its case through any particular form of evidence, … reasonable doubt may arise 'out of the evidence or the lack of evidence in the case.'" *United States v. Preldakaj*, 456 F. App'x 56, 60 (2d Cir. 2012). In other words, while a defendant may not argue that the government's proof is insufficient *as a matter of law* because law enforcement failed to use a certain investigative technique – or because the government failed to introduce a certain type of evidence at trial – a defendant *is* permitted "to make arguments to the jury regarding the absence of certain kinds of evidence." *Id.* at 60 n.3 (explaining the jury could properly acquit based on "the lack of evidence from a fingerprint expert"). "In every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence and the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit." *United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (quoting *United States v. Poindexter*, 942 F.2d 354, 359 (9th Cir. 1991)).

Here, this rule means that, assuming no recorded calls are introduced into evidence during the trial by either side, it is proper for the defense to (i) point that out to the jury and (ii) argue that the absence of such evidence weakens the government's case and furnishes a basis for reasonable doubt. *United States v. Hoffman,* 964 F.2d 21, 26 (D.C. Cir. 1992) ("It is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case.") (cited in *Preldakaj*, 456 F. App'x at 60 n.3); *United States v. Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721, at *2 (S.D.N.Y. July 14, 2014) (explaining that while the defendant was "precluded from arguing that the jury *must* acquit [him] because the Government did not introduce wiretap recordings of his conversations with Teeple," the defendant "may, as the Government concedes, argue that 'the absence of certain kinds of evidence … furnishes a basis for reasonable doubt'") (emphasis added).[2]

## II. The Government's Leaks of Confidential Information

We do not intend to get into the government's improper and illegal leaks for the improper purpose of asking the jury to render judgment on the government's investigative techniques or the outrageousness of its misconduct in connection with the grand jury investigation. Nor do we intend to use the government's misconduct to invite jury nullification.

But the government is wrong when it argues that nothing about the improper and illegal leaks could be relevant to the issues that will be before the jury. The government does not contend that it would be improper to explore on cross-examination of Mr. Davis the 2014 press

---

[2] *Hoffman* also holds that it would be improper for the defense to argue that non-introduced fingerprint evidence would have been favorable to the defense. 964 F.2d at 26. As noted above, we do not intend to argue here that recorded calls that were not introduced into evidence would be favorable to the defense.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Hon. P. Kevin Castel
March 12, 2017
Page 4

stories that appeared about this investigation and how those stories impacted Mr. Davis and the decisions he made.  The record establishes – and we plan to elicit on cross-examination – that Mr. Davis was told by the FBI in advance about these forthcoming news articles and was asked by the agents to record Mr. Walters.  As the Court well knows, the articles contained highly specific details about the investigation that made it apparent – or at least highly likely – that the leaks were emanating from a government source.  These too are topics about which Mr. Walters expects to cross-examine Mr. Davis, including what he understood at the time about the source and nature of the leaks and what impact the leaks and his understandings about them may have had on his thinking and subsequent actions.  We submit that all of this is proper cross-examination consistent with Mr. Walters' constitutional right to have a "broad opportunity" to explore the sources of Mr. Davis' biases and motives to implicate Mr. Walters – including his "fear" of the government and his desire to benefit himself.  *See Brinson,* 547 F.3d at 393-94 (explaining that "bias" that is the proper subject of broad cross-examination by a criminal defendant can be induced by "fear of a party" or "the witness' self-interest") (citation omitted).

In addition, we know that on February 9, 2017, just a few days after we submitted our Reply Brief on Mr. Walters' recent motion to dismiss the indictment, which motion argued that the government's illegal leaks were causally linked to Mr. Davis' eventual decision to cooperate, the government met with Mr. Davis and asked him about that very topic – i.e., the reasons for his cooperation with the government.  We believe we will be able to show that Mr. Davis understood the reasons these issues were being explored at that time and that the answers Mr. Davis provided to the government in this meeting were false and inconsistent with other statements he has made, and evidence his willingness to try to help the government.  We submit that this line of cross-examination as well falls easily within Mr. Walters' "broad" constitutional right to cross-examine Mr. Davis about his biases and inconsistent statements.

(And again, to the extent the Court would like further details about these additional anticipated lines of cross-examination, we ask to submit them after the completion of Mr. Davis' direct examination or *ex parte*.)

*   *   *

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Hon. P. Kevin Castel
March 12, 2017
Page 5

       For all of these reasons, the government's *in limine* application should be denied. Thank you for your consideration.

                                         Respectfully submitted,

                                         /s/ Barry H. Berke
                                         Barry H. Berke
                                         Paul Schoeman

cc:    Brooke E. Cucinella (by ECF)
       Daniel S. Goldman (by ECF)
       Michael Ferrara (by ECF),
          Assistant United States Attorneys