UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                   :

UNITED STATES OF AMERICA,        :

                                   :                **ECF CASE**

        -v-                     :

                                   :                S1 16 Cr. 338 (PKC)

WILLIAM T. WALTERS         :
     a/k/a "Billy,"            :

                                   :

                 *Defendant*.        :

                                   :
———————————————————— x

 

**REPLY SENTENCING MEMORANDUM ON BEHALF OF WILLIAM T. WALTERS**

 

                   Barry H. Berke
                   Paul H. Schoeman

                   KRAMER LEVIN NAFTALIS & FRANKEL LLP
                   1177 Avenue of the Americas
                   New York, New York 10036
                   (212) 715-9100

                   *Counsel for Defendant William T. Walters*

# TABLE OF CONTENTS

**Page**

I.    THE GUIDELINES CALCULATION .................................................................. 1

    A.    The Allegation that Mr. Davis Tipped Mr. Walters in 2006 and 2007 is Not Supported by a Preponderance of the Evidence. ............................................. 1

    B.    The Government Likewise Has Failed to Prove Its Allegations Concerning Mr. Walters' Dean Foods Trading from 2008 to 2010 and 2013. ................................... 3

    C.    The Calculation Method in *Contorinis* is the Most Suitable for Calculating Gains Attributable to the Offense. ................................................... 4

II.   THE § 3553(a) FACTORS WEIGH IN FAVOR OF A BELOW-GUIDELINES SENTENCE ................................................................................ 5

    A.    Mr. Walters' History of Charitable Good Works and Support of His Community Weigh Heavily in Favor of a Lenient Sentence. .......................................... 5

    B.    Insider Trading Sentences in This District Are Consistently Far Below the Advisory Guidelines Range. ................................................... 7

III.  FINANCIAL PENALTIES ........................................................................... 10

    A.    Gains from Trading Activity That Pre-Dates the Charged Conspiracy Cannot Be Subject to Forfeiture. .......................................................... 10

    B.    The Court Should Deny Dean Foods' Request for Restitution ................................. 12

CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apprendi v. New Jersey*,
   530 U.S. 466 (2000)..................................................................................................10

*Libretti v. United States*,
   516 U.S. 29 (1995)....................................................................................................10

*SEC v. MacDonald*,
   699 F.2d 47 (1st Cir. 1983).........................................................................................4

*SEC v. Patel*,
   61 F.3d 137 (2d Cir. 1995)..........................................................................................4

*S. Union Co. v. United States*,
   567 U.S. 343 (2012)..................................................................................................10

*United States v. Battista*,
   575 F.3d 226 (2d Cir. 2009).................................................................................13, 14

*United States v. Bodouva*,
   853 F.3d 76 (2d Cir. 2017).......................................................................................10

*United States v. Canales*,
   91 F.3d 363 (2d Cir. 1996)..........................................................................................4

*United States v. Capoccia*,
   503 F.3d 103 (2d Cir. 2007)......................................................................................11

*United States v. Concepcion*,
   983 F.2d 369 (2d Cir. 1992)........................................................................................1

*United States v. Contorinis*,
   692 F.3d 136 (2d Cir. 2012)......................................................................................10

*United States v. Donaghy*,
   570 F. Supp. 2d 411 (E.D.N.Y. 2008) ......................................................................13

*United States v. Fishman*,
   631 F. Supp. 2d 399 (S.D.N.Y. 2009).........................................................................7

*United States v. Fruchter*,
   411 F.3d 377 (2d Cir. 2005)......................................................................................10

*United States v. Goffer*,
  721 F.3d 113 (2d Cir. 2013)......................................................................9

*United States v. Gupta*,
  904 F. Supp. 2d 349 (S.D.N.Y. 2012).........................................................4

**Statutes**

18 U.S.C. § 981(a)(2)(B) .........................................................................10

18 U.S.C. § 3553(a) .............................................................................5, 8

18 U.S.C. § 3663(b)(4) ........................................................................13, 14

18 U.S.C. § 3663A(b)(4)..........................................................................12

18 U.S.C. § 3664(d)(5) .............................................................................14

18 U.S.C. § 3664(h) ...........................................................................13, 14

U.S.S.G. § 2B1.1(b)(1) ..............................................................................5

U.S.S.G. § 2B1.4(a) ..................................................................................5

**Other Authorities**

*United States v. Contorinis*,
  No. 09 Cr. 1083 (RJS), (S.D.N.Y. Dec. 17, 2010), Sentencing Hearing Tr. ............4

*United States v. Martoma*,
  No. 12 Cr. 0983 (PGG), (S.D.N.Y. Sept. 8, 2014), Sentencing Hearing Tr. ........8, 9

*United States v. Rajaratnam*,
  No. 09 Cr. 1184 (RJH), (S.D.N.Y. Oct. 13, 2011), Sentencing Hearing Tr. ............8

*United States v. Riley*,
  No. 13 Cr. 339 (VEC), (S.D.N.Y. Apr. 27, 2015), Sentencing Hearing Tr.............9

Mr. Walters respectfully submits this brief response to the government's
Sentencing Memorandum.  The government's approach is to calculate the highest possible
offense level for Mr. Walters without pausing to consider, much less analyze, which trades may
and may not properly be included.  The government then improperly presumes that a sentence
within the resulting Sentencing Guidelines range would be appropriate, with no meaningful
consideration of the factors that this Court is required to weigh in crafting a sentence that is
sufficient but not greater than necessary to accomplish the purposes of sentencing.  A review of
those factors, including a fair assessment of Mr. Walters' extraordinary life and commitment to
helping others, has already led the Probation Department to recommend a sentence of one year
and one day.  We respectfully submit that the Court should reject the government's unduly
mechanical and merciless approach to sentencing and impose the sentence recommended by
Probation.

## I.    THE GUIDELINES CALCULATION

### A.    The Allegation that Mr. Davis Tipped Mr. Walters in 2006 and 2007 is Not Supported by a Preponderance of the Evidence.

The government urges the Court to include in its Guidelines calculation the gains
from Mr. Walters' 2006 and 2007 Dean Foods trades.  The dispute here is on the facts not the
law.  Uncharged "relevant conduct" can be included, but only where the government meets its
burden of establishing the illegality of that conduct by a preponderance of the evidence.  *United
States v. Concepcion*, 983 F.2d 369, 388 (2d Cir. 1992).  This standard has not been met.

The government misleadingly argues that "[i]t is of no moment that Davis himself
could not recall whether he passed inside information to Walters in 2006 and 2007."  (Gov.

Br. 9.)[1]  In fact, as set forth in Mr. Walters' Sentencing Memorandum, Mr. Davis' plea

allocution and plea agreement indicate that Mr. Davis does not believe he tipped Mr. Walters

prior to 2008.  And for each trade in 2006 and 2007 about which he was questioned, Mr. Davis

testified at trial that he had no recollection of tipping Mr. Walters.  (Trial Tr. 661:8–10; 663:16–

19; 674:5–11.)  The evidence as it relates to Mr. Davis is therefore not, as the government

suggests, equivocal with respect to 2006 and 2007.  The evidence is that he did not tip Mr.

Walters during that period.

            The government is also being misleading when it simply declares, "[t]he

documentary evidence at trial established a pattern of timely communications and trades in 2006

and 2007 that mirrors the pattern throughout the period charged in the Indictment."  (Gov. Br. 9.)

In fact, there was no evidence presented at trial of any communications – calls, texts, or emails –

in 2006 between Mr. Davis and Mr. Walters.  For the 2006 trade at issue, the government is

merely relying on the fact that Mr. Walters purchased Dean Foods stock on July 31, 2006, nearly

two weeks after a board meeting at which, according to the minutes, Mr. Davis learned that Coca

Cola was interested in a potential acquisition of Dean Foods (which never in fact occurred).  (GX

100-G; GX 402; Trial Tr. 89:9–11).  The purported "pattern" evidence is equally unpersuasive

with respect to the February and March 2007 trades.  There is no evidence of any

communications between Mr. Walters and Mr. Davis prior to Mr. Walters' stock purchases and

the board meeting to discuss a special dividend occurred on February 12, 2007 – one week *after*

Mr. Walters had begun rebuilding his position in Dean Foods.  (GX 2300; GX 408.)  Finally, the

complete absence of any inculpatory "pattern" prior to 2008 is reinforced by the fact that Mr.

Walters purchased Dean Foods stock beginning on August 7, 2007, the day Dean Foods

---

[1] The government's Sentencing Memorandum is referred to in citations as "Gov. Br." and Mr.
Walters' Sentencing Memorandum is referred to as "Def. Br."

announced "fairly dismal" second quarter results. (Trial Tr. 664:22; GX 2301.) Mr. Davis

testified that at this time "the economy was poor, and the environment that Dean Foods depended

upon in terms of commodity prices, raw milk prices and so forth, was very volatile." (Trial Tr.

664:25–665:2.) This was the wrong time to buy and Mr. Walters – with no evidence of any

timely communications with Mr. Davis – sold out of his position on September 26 and 27, 2007

and incurred a realized loss of more than $2.5 million. (GX 2301; Trial Tr. 2083:19–24; GX

2301-A.)

       The absence of any testimony linking the 2006 and 2007 trades to inside

information and the failure of the government to find a probative "pattern," beyond the fact that

Mr. Walters bought and sold Dean Foods stock, precludes a finding of relevant conduct by a

preponderance of the evidence. Accordingly, the 2006 and 2007 trading should not be

considered.

    **B.**    **The Government Likewise Has Failed to Prove Its Allegations Concerning**
               **Mr. Walters' Dean Foods Trading from 2008 to 2010 and 2013.**

       In its Sentencing Memorandum, the government merely relies on the fact that it

presented evidence to the jury relating to Mr. Walters' trades from 2008 to 2010 and in 2013.

But until now, the government had the luxury of using that evidence as it wished without ever

requiring a fact finder to agree with, or even analyze, the government's allegations relating to

these specific trades. In order to use those trades as relevant conduct for purposes of sentencing,

the government was required to make a convincing argument about each of the trades it wishes

to include. This it has not done, nor could it. Nothing could explain why, for example, Mr.

Davis would have tipped Mr. Walters to buy Dean Foods stock in February 2008, when Mr.

Davis knew that the equity offering was likely to cause the price of Dean Foods stock to decrease

in value. (DX 471.) Nor is it possible to accept Mr. Davis' testimony that he tipped Mr. Walters

to buy Dean Foods stock in April 2010 at the very point in time when Mr. Davis knew that the company was having a bad quarter.  (Trial Tr. 758:16–18; GX 507.)  As set forth in the Sentencing Memorandum, these and other tips were clearly reverse engineered in ways that do not withstand scrutiny.  The government's failure to demonstrate that its allegations with respect to each of these trades satisfy the preponderance of the evidence standard requires that they be excluded from the Sentencing Guidelines calculation.

      **C.**    **The Calculation Method in *Contorinis* is the Most Suitable for Calculating Gains Attributable to the Offense.**

The government asks the Court to use the government's method of calculating gains because that method is "common."  (Gov. Br. 10.)  What the government's argument obscures is that in the only criminal case cited by the parties in which a defendant disputed the use of that method, and the choice of methods would actually make a difference at sentencing – *United States v. Contorinis*, No. 09 Cr. 1083 (RJS), (S.D.N.Y. Dec. 17, 2010), Sentencing Hearing – the court rejected the government's method and used the method we request here.  In an effort to avoid this result, the government relies heavily on civil enforcement cases in which the SEC takes the position that it is fair for a civil defendant to have uncertainties about the proper amount of disgorgement resolved against him.  (Gov. Br. 11) (citing *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) and *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983) (en banc)).  By contrast, in a criminal case, the rule of lenity, which "requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply," *United States v. Canales*, 91 F.3d 363, 367 (2d Cir. 1996) (citation omitted), requires the opposite result, especially in order to minimize the harsh and arbitrary effect that gain calculations under the Sentencing Guidelines have on insider trading defendants.  *See*, *e.g.*, *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) ("By making a Guidelines

sentence turn, for all practical purposes, on this single factor, the Sentencing Commission effectively ignored the statutory requirement that federal sentencing take many factors into account . . . and, by contrast, effectively guaranteed that many such sentences would be irrational.").

   Here, the choice of methodology, as well of the determination of what trades to include in the calculation, makes a difference to the size of the enhancement under U.S.S.G. § 2B1.1(b)(1). As set forth in the chart attached to Dr. Ching T. Watson's declaration, (Exhibit B to Mr. Walters Sentencing Memorandum), using the *Contorinis* method and including only the trading underlying the substantive counts of conviction reduces the total gain to approximately $7.5 million, resulting in an enhancement of 18 levels, a total offense level of 26 and a sentencing range of 63–78 months.[2] Even if all of the trading within the time period of the Indictment (2008–2013) is included, using the *Contorinis* method results in a total gain of approximately $22.6 million, an enhancement of 20 levels, a total offense level of 28 and a range of 78–97 months. This same result would be reached even using the government's calculation if only the 2012 and 2013 trading is included.

## II.  THE § 3553(a) FACTORS WEIGH IN FAVOR OF A BELOW-GUIDELINES SENTENCE

### A.  Mr. Walters' History of Charitable Good Works and Support of His Community Weigh Heavily in Favor of a Lenient Sentence.

   The government argues that the Court should view Mr. Walters' history of good works and charitable giving as attempts to use his wealth as a "get-out-of-jail card," rather than as evidence of his good character and a life spent treating those less fortunate with generosity, decency and respect. (Gov. Br. 19.) This is a cynical and unjustified interpretation of the PSR and the 100 letters submitted on Mr. Walters' behalf.

---

[2] The government is correct that the proper base offense level pursuant U.S.S.G. § 2B1.4(a) is 8.

Mr. Walters' countless acts of decency and altruism were not designed to score points for a more lenient sentence.  Long before he was charged in this case, Mr. Walters dedicated both his time and resources to improving the lives of others.  Even in his 20s, when he was working as a car salesman, Mr. Walters was generous with others and tried to help friends in need.  (*See*, *e.g.*, Cottner Ltr. at 2.)  For over 20 years, Mr. Walters has been a consistent supporter of and advocate for Opportunity Village, spending countless hours leading their capital campaign, serving on the Board, giving tours to friends and potential donors, taking tickets at fundraisers, hiring Opportunity Village clients at his own businesses, and helping Opportunity Village to establish contracts with other local businesses.  (*See* Def. Br. 12-23.)  He both conceived of and spent roughly a decade organizing an annual Caregivers Ball, which celebrated the contributions of nonprofit workers and volunteers.  (*See*, *e.g.*, S. Walters Ltr. at 2; L. Smith Ltr. at 2.)  And for ten years, Mr. Walters and his wife, Susan, organized a Christmas dinner and toy drive for needy families.  (S. Walters Ltr. at 2; Thayer Ltr. at 2.)  The government also ignores the many accounts of Mr. Walters' smaller acts of kindness and generosity, such as his sponsorship of Dr. Benjamin Kelley, who wrote that Mr. Walters had a "profound impact" in "shaping [his] integrity, perseverance, work ethic and profession choice."  (Kelley Ltr. at 1.) These are just a few examples of Mr. Walters' selfless conduct, which were detailed for the Court in Mr. Walters' Sentencing Memorandum.  Any allegation that these good deeds were done with an ulterior motive or self-serving intent distorts the consistent refrain of the letters written on Mr. Walters' behalf.

The government also sounds a false note when it contends that Mr. Walters has led a deceitful "double life," misapplying a phrase that Judge Marrero used in his sentencing decision in *United States v. Fishman*, 631 F. Supp. 2d 399, 401 (S.D.N.Y. 2009).  Samuel

Fishman was a partner at Latham & Watkins who pleaded guilty to defrauding his law firm and his clients. *Id.* at 404. At sentencing, Judge Marrero expressed particular concern that Mr. Fishman had repeatedly violated his oath as an officer of the court and breached the trust of dozens of colleagues and clients, noting that "[t]he offender's clean outward appearance inspires the confidence of his victims, while also rendering those closest to him – trusting clients, partners, business associates – his best bets." *Id.* at 402. Even with these aggravating factors, the Court imposed a sentence of 15 months, which was substantially below the recommended Guidelines range of 27 to 33 months. *Id.* at 406.

Unlike Mr. Fishman, Mr. Walters has not led a "double life." He did not defraud his friends and colleagues or breach fiduciary duties owed to clients. The conduct for which he was convicted was completely unconnected to his charitable works and his interpersonal relationships with friends and family. The letters written on Mr. Walters' behalf accurately depict a man who has sincerely devoted a substantial portion of his life to improving the lives of those around him. We therefore urge the Court to view Mr. Walters' letters of support and history of good deeds as factors that weigh heavily in favor of imposing a below-Guidelines sentence.

**B.    Insider Trading Sentences in This District Are Consistently Far Below the Advisory Guidelines Range.**

The government's attempt to persuade the Court to impose a Guidelines sentence is, once again, significantly misleading in that it relies on comparisons to cases in which defendants received the benefit of substantial variances below the range indicated by the Guidelines. In its memorandum, the government points only to the lengthy sentences that certain defendants received, without mentioning the variances.

For example, Raj Rajaratnam, the hedge fund manager of the Galleon Group, faced an offense level of 38 and a Sentencing Guidelines Range of 235 to 293 months. Sentencing Hearing, *United States v. Rajaratnam*, 09 Cr. 1184 (RJH), (S.D.N.Y. Oct. 13, 2011), Tr. 27:21–23. In evaluating the 18 U.S.C. § 3553(a) factors, the court considered Mr. Rajaratnam's charitable works, concluding that they went "considerably beyond the norm." *Id*. at 32:10. The court also considered Mr. Rajaratnam's medical conditions, noting that although "[i]llness does not provide a get-out-of-jail-free card, [] some form of forbearance, however constrained by circumstances, is fundamental to our system of justice and is appropriate here." *Id*. at 33:2–4. Weighing these § 3553(a) factors in Mr. Rajaratnam's favor, the court imposed a sentence of 132 months, which reflected a downward variance of 103 months below the bottom of the recommended Guidelines range. *Id*. at 28:8–14.

Similarly, when defendant Mathew Martoma, a portfolio manager at SAC Capital, was sentenced the court calculated Mr. Martoma's gain attributable to the insider trading scheme to be between $200 and $400 million, resulting in a range of 188 to 235 months. Sentencing Hearing, *United States v. Martoma*, 12 Cr. 0983 (PGG), (S.D.N.Y. Sept. 8, 2014), Tr. 11:1–13. In considering the § 3553(a) factors, the court noted that Mr. Martoma had a history of "reckless conduct," including the falsification of his law school transcripts on federal clerkship applications and an associated attempt to conceal his actions from the Harvard Law School disciplinary panel. *Id*. at 40:17–41:4. Despite these aggravating considerations, the court concluded that the Guidelines range was "far more than is necessary to accomplish all of the objectives of sentencing." *Id*. at 42:11–12. The court determined that a sentence of 108 months was "necessary to reflect that the sum of Mr. Martoma is much more than the bad acts of his life and to reflect the extraordinary acts of kindness he has shown to friends and family over the

years." *Id*. at 43:1–4.  Mr. Martoma's sentence was 80 months below the lower end of the

recommended Guidelines range.

      David Riley, the former chief information officer at Foundry Networks, was

found guilty of leaking information about upcoming acquisitions and financial announcements to

a hedge fund analyst.  At his sentencing hearing, the court described him as a "high level trusted

insider who knew better" than to share confidential, inside information with people outside of his

firm.   Sentencing Hearing, *United States v. Riley*, 13 Cr. 339 (VEC), (S.D.N.Y. Apr. 27, 2015),

Tr. 44:23.  The recommended Guidelines range was 121 to 151 months – a calculation that the

court called "unreasonable in the facts of this case." *Id*. at 17:9–10; 18:2.  Instead, the court

imposed a sentence of 78 months, which was 43 months below the recommended Guidelines

range. *Id*. at 49:12.

      Finally, the government's attempt to draw a comparison between Mr. Walters and

Zvi Goffer ignores the most significant factors that contributed to Mr. Goffer's lengthy sentence.

Mr. Goffer, a proprietary trader at the Schottenfield Group, LLC, "spearheaded" a complex

network of insiders who shared illegal information. *United States v. Goffer*, 721 F.3d 113, 118

(2d Cir. 2013).  He bribed attorneys at the law firm of Ropes & Gray to provide him with

information about upcoming corporate acquisitions and then distributed those tips to his friends

and business partners. *Id*. at 119.  Mr. Goffer even enlisted the aid of an attorney friend to help

him interpret documents that he had procured illegally to ensure that he understood their

implications for trading. *Id*.  At sentencing, the district court concluded that Mr. Goffer was the

"'leader of a fraudulent enterprise' who 'recruited people' and poisoned other traders.'" *Id*. at

130.  He was sentenced to 120 months, which was just below the recommended Guidelines range

of 121 to 151 months. *Id*. at 131.  In contrast to Mr. Goffer, the scheme for which Mr. Walters

was convicted involved only one source of information and even according to Mr. Davis, "started fairly innocently." (Trial Tr. 601:14.) As set forth in Mr. Walters' Sentencing Memorandum, (Def. Br. 67–68), Mr. Walters cannot fairly be said to have corrupted Mr. Davis or anyone else.

Finally, none of the defendants to whom the government seeks to draw comparisons is a 71-year-old man, who shows no likelihood of recidivism and for whom, as set forth in Mr. Walters' Sentencing Memorandum, incarceration will take a heavy toll.

## III.    FINANCIAL PENALTIES

### A.    Gains from Trading Activity That Pre-Dates the Charged Conspiracy Cannot Be Subject to Forfeiture.[3]

In key respects, the amount of proceeds for purposes of forfeiture is narrower than the "gains from the offense" for purposes of the Sentencing Guidelines. As the government agrees, forfeiture is not applicable to "losses avoided," and fees and commissions are also properly excluded. This is true because "[t]he definition of proceeds for insider trading violations is 'the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.'" *United States v. Contorinis*, 692 F.3d 136, 145 (2d Cir. 2012) (quoting 18 U.S.C. § 981(a)(2)(B)); *see also United States v. Bodouva*, 853 F.3d 76, 79 (2d Cir. 2017) (noting that the definition of proceeds under § 981(a)(2)(B) applies to insider trading cases). Accordingly, there is no dispute that the Court

---

[3] The Supreme Court held in *Libretti v. United States*, 516 U.S. 29, 49 (1995), that defendants do not have a constitutional right to a jury determination on forfeiture in a criminal case, and the Second Circuit has held that criminal forfeiture is not subject to the *Apprendi v. New Jersey*, 530 U.S. 466 (2000), line of cases. *See United States v. Fruchter*, 411 F.3d 377, 383 (2d Cir. 2005). Because *Libretti* pre-dated *Apprendi* and *Fruchter* pre-dated the Supreme Court's decision in *S. Union Co. v. United States*, 567 U.S. 343 (2012), which undermines *Fruchter's* reasoning, the continuing validity of both *Libretti* and *Fruchter* are subject to question. Accordingly, Mr. Walters preserves for any appeal the right to argue that any forfeiture order based on facts not found by the jury beyond a reasonable doubt violated his constitutional right to trial by jury.

should deduct fees and commissions from any of the profit-generating trades that it determines

are subject to forfeiture.  The necessary adjustments are set forth in the accompanying

supplemental declaration of Dr. Ching T. Watson.  (Watson Supp. Decl., Supp. Attach. A)

(attached as Exhibit A).

   The dispute here is over which profit producing trades should be included in the

forfeiture total.  As set forth above, none of the trades in the 2006–07 period or the 2008–10

period should be included because the allegations with respect to those time periods were not

proven by a preponderance of the evidence.  Moreover, the 2006–07 trades must be excluded for

the additional legal reason that they are outside the boundaries of the conspiracy charged in the

Indictment.  Although forfeiture may be available in connection with uncharged conduct that

falls within the time period of a conspiracy count, forfeiture is not available for proceeds of

conduct that clearly predates the start date of the conspiracy charged in the indictment.  *United*

*States v. Capoccia*, 503 F.3d 103, 117–18, n.19 (2d Cir. 2007) (finding that the district court

erred in ordering forfeiture of the proceeds of bank transfers that pre-date the conspiracy charged

in the indictment).  In other words, just as the jury was instructed that it could not convict Mr.

Walters of conspiracy based on conduct in 2006 and 2007, (Trial Tr. 2957:16–25), the finder of

fact for purposes of forfeiture – in this case, the Court – may not find that gains from conduct in

2006 and 2007 constitute proceeds of the charged conspiracy.

   Based on the foregoing analysis, the only trades for which forfeiture applies are

the Dean Foods trades in 2012 and the Darden trade in 2013.  Using the government's

methodology and deducting fees and commissions, the maximum forfeiture is $18,922,197.67.

Using the methodology employed in *Contorinis*, which for the reasons previously discussed is

more appropriate, the amount is $7,253,664.90.  (Watson Supp. Decl., Supp. Attach. A) (attached as Exhibit A).

     **B.**     **The Court Should Deny Dean Foods' Request for Restitution.**

     Dean Foods has submitted a letter to the Court seeking $9,118,406.13 in restitution from Mr. Walters, jointly and severally with Mr. Davis.  This request, at least as it relates to Mr. Walters, should be denied because the expenses for which restitution is sought are mostly outside the scope of permissible restitution under the Mandatory Victims Restitution Act (MVRA) and those that may be within the scope of reimbursable expenses have not been substantiated.

     As noted in Mr. Walters' Sentencing Memorandum, restitution is only available for certain specific categories of expenses that may be incurred by the victim of a federal crime. Courts that have entertained comparable restitution requests have been required to determine whether the expenses were both "necessary" and "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).  Here, Dean Foods seeks reimbursement for three categories of expenses that do not plausibly fall within these parameters.

     *First*, the $1,840,213 in director fees that Dean Foods paid to Mr. Davis between 2008 and 2014 have nothing to do with Dean Foods' participation in the investigation or prosecution of the offense or attendance at proceedings.

     *Second*, the $195,531.13 in fees responding to a defense subpoena in the SEC's civil enforcement were not "necessary" to the investigation and prosecution "of the offense," which is a reference to a criminal offense, not a civil cause of action.

     *Third*, Dean Foods seeks reimbursement for $3,571,475.64 in attorney's fees that Dean Foods claims to have advanced to Mr. Davis to pay for Mr. Davis' legal fees.  A common-

sense reading of the statute indicates that these costs are not reimbursable under the MVRA because they were not incurred in the course of the *company's* "participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4). Moreover, Dean Foods has not established that it was obligated to advance these fees to Mr. Davis so as to qualify as "necessary" under the statute. Finally, since it appears that Mr. Davis will be required to repay these fees once his conviction is formally entered, requiring Mr. Walters to pay them now would make no sense and would only lead to a double recovery for Dean Foods or a windfall for Mr. Davis. The far more sensible approach would be to apportion to Mr. Davis the obligation, if there is one under the MVRA, to reimburse Dean Foods for the amount of his legal fees, as permitted by 18 U.S.C. § 3664(h). *See United States v. Donaghy*, 570 F. Supp. 2d 411, 423–24, 433 (E.D.N.Y. 2008), *aff'd sub nom. United States v. Battista*, 575 F.3d 226 (2d Cir. 2009) (explaining that co-conspirators can be held proportionally or jointly and severally liable for restitution, and writing that "[i]n the interest of justice, the Court will allocate these costs to the appropriate defendant or defendants").

The only expenses sought by Dean Foods that may potentially meet the statutory requirements for restitution are its own legal fees incurred in connection with the criminal case. Here, Dean Foods requests $3,511,186.36 in attorney's fees, but includes fees in connection with both the criminal case and the SEC's civil action, as well as its own internal investigation. Dean Foods has not made a submission that would allow the Court to determine what portion of this amount relates to work that falls within the statutory framework and of that portion, what amount was, in fact, "necessary." *See Donaghy*, 570 F. Supp. 2d at 423 (explaining that "[t]he government bears the burden of proving the amount of loss sustained by the victim by a preponderance of the evidence . . . . [a] court must base its restitution award on more than mere

speculation about a victim's actual losses"); *Battista*, 575 F.3d at 234 (affirming rejection of request for internal investigation costs that "while certainly significant, were not associated with assisting the government in the investigation and prosecution of the defendants' criminal offenses, and thus, are not compensable under 18 U.S.C. § 3663(b)(4)").

Although the government asks the Court to delay decision on restitution for up to 90 days pursuant to 18 U.S.C. § 3664(d)(5), presumably to address the lack of adequate substantiation for Dean Foods' claims, Mr. Walters respectfully submits that his sentencing, including a fine and forfeiture, should go forward and be completed as scheduled on July 27 and that the question of restitution to Dean Foods should be addressed in connection with the sentencing of Mr. Davis.  Apportioning any liability for restitution to Dean Foods to Mr. Davis pursuant to 18 U.S.C. § 3664(h) would be appropriate since Mr. Davis, not Mr. Walters, is the person who breached a duty to Dean Foods, is the but-for cause of all of Dean Foods' expenses, and was the actual recipient of much of the expenses for which restitution is sought.

-14-

## CONCLUSION

For the foregoing reasons, as well as those set forth in Mr. Walters' Sentencing Memorandum, Mr. Walters respectfully requests that the Court follow the sentencing recommendation of the Probation Department and impose a sentence of one year and one day, in addition to the monetary sanctions that the Court determines are appropriate after consideration of all the facts and circumstances.

Dated:  New York, New York            Respectfully submitted,
        July 25, 2017

                                      KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                      By:  /s/ Barry H. Berke
                                      _____
                                      Barry H. Berke
                                      Paul H. Schoeman

                                      1177 Avenue of the Americas
                                      New York, New York 10036
                                      (212) 715-9100  (Phone)
                                      (212) 715-8000  (Fax)
                                      bberke@kramerlevin.com
                                      pschoeman@kramerlevin.com

                                      *Counsel for Defendant William T. Walters*