UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                  S1 16-cr-338 (PKC)

      -against-                                ORDER ON
                                                STATEMENT OF
                                                REASONS FOR SENTENCE

WILLIAM WALTERS,

                      Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant William T. Walters stands convicted of four counts of securities fraud, four counts of wire fraud, one count of conspiracy to commit securities fraud, and one count of conspiracy to commit wire fraud. Set forth below is the statement of reasons for the sentence to be imposed on him.

        In sentencing the defendant I have considered the presentence report, recommendation and addendum and all of the sentencing submissions referenced at the outset of this proceeding. I have considered the thoughtful presentations by Mr. Berke and Ms. Cucinella and the brief comment of Mr. Walters. I have considered each of the factors set forth in section 3553(a), although I need not mention them.

        When it comes to the stock market, Billy Walters is a cheater and a criminal and not a very clever one. The paper trail of phone records and trading records made it inevitable that he would be caught.

        The crime was amateurishly simple: Walters knew that Tom Davis was a director of Dean Foods, a publicly-traded company. As a director, Davis had access to material non-public information. Davis was a big shot in Dallas circles and a former investment banker.

Walters was a big deal in sports gambling and golfing circles.  He was a minor celebrity in Las Vegas.   Davis was eager to please Walters who he considered a friend.  Gifts of information to Walters would ingratiate Davis to Walters.   Walters wanted the valuable information because he could trade on it.  Davis passed information to Walters and Walters placed trades. Walters also arranged for over $900,000 in loans for Davis.  In at least one instance, Walters tipped information to a person who owed Walters money thereby enabling the person to trade in Dean Foods and pay down the loan.  The evidence also supported the conclusion that Davis tipped material nonpublic information concerning Darden Restaurants to Walters who traded on that information.

Walters faced no financial pressures. He did not need to commit these crimes which makes them all the worse.  When not engaged in insider trading, he supported himself through sports gaming and through a portfolio of golf courses and car dealerships that he and/or his wife owned.

He had amassed a fortune. He had a private plane and a $17 million home on the west coast.  For the combined tax years 2011 through 2015, his adjusted gross income exceeded $175 million. These crimes were not about enhancing a life of comfort or luxury—he had that already.  It seems to me that Walters was fixated on appearing to himself –and to others--to be a winner.  At this point in life, money was mostly a way of keeping score.

Walters had a difficult childhood. His father died when he was 8 months old.  His mother moved away for work and he was raised by his grandmother.

He has by all reports a wonderful relationship with his wife of 40 years and the past decade or more has lived a clean lifestyle.  He has a son from a prior marriage who is developmentally disabled and Walters is supportive of his needs.  He has engaged in large and

splashy displays of philanthropy—he has served on 8 charity boards and is a major contributor to Opportunity Village providing work for the developmentally disabled.  The impressiveness of these charitable endeavors is undercut by the knowledge that some were likely supported by ill-gotten gains.

But the nature of his businesses put him in touch with everyday people and his quiet, under the radar assistance to many individuals says something important about the man. It is easy as a judge to become jaded by letters of support for the rich and powerful.  They can be easy to come by.  But I will say that these letters, in kind and character, were quite different.  They tell of good works about which no one was ever supposed to know.

He personally provided assistance to persons with family medical needs, some close to him but some mere acquaintances, by finding the right doctors and then paying for them or offering to pay for them and for paying for travel and housing related to the medical care.  In the letters submitted, I count 16 instances of circumstances similar to this.  In one instance, he learned that the wife of a young service technician at an auto dealership he owned had terminal cancer with months to live.  The couple had a young child.  He paid for a family vacation, a new vehicle and his full salary while tending to his wife.

He also rendered financial assistance and mentorship to people in need. For example, he paid for the flights for a person to attend his father's funeral in Rumania and in one instance a young man's medical school tuition.  He assisted men in maintaining their sobriety.  But acts of generosity are not a get out of jail card.

Walters was 62 to 69 years of age when he committed his crimes. Today he is 71 years of age.  He correctly describes himself as being in "good" physical condition, although he has host of physical conditions for which he is prescribed medications.  So far, none have been

so severe as to prevent him from travelling and golfing. Yet, one of the many considerations in fashioning a sentence is his remaining life expectancy of 14.6 years.

There is a need for just punishment in this case.  50% of all Americans with annual incomes ranging from $30,000 to $75,000 own stocks.  [Gallup, April 20, 2016, http://www.gallup.com/poll/190883/half-americans-own-stocks-matching-record-low.aspx] They are not placing a wager at a betting parlor. These Americans are making an investment of their hard earned savings.  Trust in the integrity of our capital markets is what makes our national economy work.  Cheating of the type engaged in by Billy Walters undermines confidence in the markets and thus the national economy.

Walters, of course, was not acting as a fiduciary or an insider in committing his crimes.  He used no sophisticated means and abused no special relationship.  He was neither a broker-dealer nor someone trained or licensed in the securities or banking industries.   He did not put other people's money at risk.   His crimes are remarkable for the sheer size of his trades and the profits he made and the losses he avoided.   In calculating the Guidelines, I concluded that the range of his gains and avoided losses was more than $25 million but not more than $65 million.

In terms of protecting the public from further crimes of this defendant, based upon age and circumstances—and that his crimes here are well known, I doubt that Mr. Walters will reoffend.

However, there is a strong need to deter others from engaging in conduct of this type.  While Walters scheme was not very sophisticated, insider trading is often difficult to detect and when proven should be punished with a view towards deterring others.

- 5 -

Insider trading is committed by people in all walks of life: investment bankers, hedge fund managers and multi-millionaires. It is also committed by secretaries, administrative assistants, word processing operators and paralegals. The oath that all new federal judges take includes the following: that "I will administer justice without respect to persons, and do equal right to the poor and to the rich. . . ." There is a need to deter persons regardless of their station in life. A significant prison sentence is an excellent way to deter insider trading.

I have considered the Sentencing Guidelines, Policy Statements and official commentary of the United States Sentencing Commission. I have considered them in an advisory manner and recognize that I am not obligated to sentence within the Guidelines. I acknowledge variance discretion. His crimes place him at Total Offense Level 30, Criminal History Category I, for a Guideline range of imprisonment of 97 to 121months. Probation recommends a sentence of a year and a day and defendant asks that I sentence him to this. Such a sentence would not achieve the purposes of section 3553(a).

For all the foregoing reasons, I intend to impose a sentence of 60 months imprisonment on Counts 1 to 10, all to run concurrently, 1 year supervised release on Counts 1 to 10 to run concurrently, a fine of $10 million dollars, restitution and forfeiture will be imposed but the amount will be determined within 90 days and a special assessment of $1000.

The foregoing in my view is sufficient but not greater than necessary to achieve the purposes of section 3553(a).

- 6 -

SO ORDERED.

*[signature]*
P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 27, 2017